PAUL *v.* THE STATE.

No. 12528. OCTOBER 11, 1938.

*J. M. Forrester* and *J. W. Dennard,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Allan C. Garden, solicitor-general, E. J. Clower,* and *E. G. Arnall,* contra.

RUSSELL, Chief Justice. Dennis Paul was convicted of murder, without a recommendation. His motion for new trial was overruled, and he excepted.

From the testimony of the State's witnesses it appeared that a negro school closing exercises were held on April 30, 1937, at a church. The negroes began assembling during the afternoon, and the exercises proper commenced about sundown and lasted until about ten-thirty o'clock that night. Jeff Glover, the deceased, and his wife Thelma came to the church about the middle of the afternoon and remained until the exercises were completed. Soon after the conclusion of the exercises Jeff and Thelma were shot and instantly killed by the defendant as they came out of the church. The testimony of the eye-witnesses disclosed that the defendant was seen on the church grounds during the afternoon, left there shortly before the exercises commenced, came back, and by one of the witnesses was seen looking through the church window to the place where Jeff and Thelma Glover were seated inside the church. Myrick, a witness for the State, testified that he was present at the scene of the homicide, and saw the defendant shoot Jeff; that the defendant did not say anything to Jeff before he shot him, nor had Jeff done anything to the defendant; that Jeff did not have any weapon, nor did he say or do anything to the defendant before the defendant shot him. Other witnesses testified to the same effect. It appears from this testimony that Glover stepped outside the church and had walked only a few feet when Dennis Paul, who was outside the church, with a shotgun, fired one shot at Glover, killing him instantly. When the first shot was fired Thelma Glover whirled and attempted to run back into the church, but the defendant almost immediately fired a second shot, killing her instantly. Immediately after the shooting the defendant left the scene. The sheriff of the county testified that after the homicide he tried to locate the defendant, but failed; and that the defendant was later arrested in Gainesville, Florida. Two witnesses for the defendant testified that they were well acquainted with

him, as he had worked for them for several years, and that so far as they knew his character was good; that there was insanity in his family; and that they did not consider him of average mentality, though he was a good worker. On cross-examination both witnesses testified that in their opinion he knew right from wrong.

The defendant's statement to the jury appears thus in the record: "This fellow, Jeff, told him that he was going with his wife about two years ago, that there would never be any trouble about it, and up until about two weeks before the school closing, in town, one Saturday, told him not to be caught at his house. Defendant stated that he didn't go to his house any more, told him that if he did somebody would have to go out there and get him, said he would kill him out there. That evening he went to Piney Grove Church, didn't get there until just a little before sundown, he came up to the church and told him after the school closing he was going to do what he told him. That that was all that was said. Defendant further stated that for two years he gave both of the deceased money, he gave them money for the woman. Paid $50 for an automobile. He did not do anything to either of them."

The special grounds of the motion for new trial are as follows: (4) "Movant contends that the court committed error in failing to charge the law of previous good character of the defendant, although the good character of the defendant was proven and put in issue in the trial of said cause." (5) "Movant contends that the court committed error in failing to charge the law as to the criminal responsibility of one not of sound mind and one who is a moron as is defined in sections 26-301 to 26-305 and 102-103 of the Code of Georgia of 1933." No request for these charges was presented.

■ "While the good character of an accused person is a substantive fact, and evidence of such character should be weighed and considered by the jury in connection with all the other evidence in the case, still such good character of the accused is not a distinct substantive defense. A proper instruction should be given in every case where the accused puts his character in issue; but in the absence of a timely request, an omission to give a specific charge on the subject will not require a new trial. It is only in exceptional cases where the court fails to charge relatively

to the good character of the accused that a new trial should be granted. *Seymour* v. *State,* 102 *Ga.* 803 (30 S. E. 263)." *Scott* v. *State,* 137 *Ga.* 337 (3) (73 S. E. 575). The ruling in *Seymour* v. *State,* supra, is, by the language of the opinion, as well as the headnote, confined to the "special and peculiar facts" of that case, which take it out of the general rule. This case falls within the general rule, and not the exception.

■ The court did not err in failing to "charge the jury the law as to the criminal responsibility of one not of sound mind and one who is a moron as defined in sections 26-301 to 26-305 and 102-103 of the Code of Georgia of 1933," the applicability of the law as contained in these sections of the Code not appearing from the record or being stated in this ground of the motion.

■ The evidence authorized the verdict, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*